It's a great honor to be before you all today. I appreciate every moment of your time. Just as a roadmap, I'd like to start off with issues of waiver. Second, I'm going to move on to appellant's claims. They survived the statute of limitations regardless of RCW 4.96020. I'd like to distinguish Boston. And then, if there's time, I'd like to discuss why Boston was understandably but wrongly decided. And if I may, reserve seven minutes for rebuttal. Counsel, if you'll just keep an eye on the clock, I'll try to help you, but you're responsible for your own time. So just keep, you see the little clock there, just it ticks down so when you have seven minutes, if you want to sit down and save your rebuttal time, please do. Thank you, Your Honor. First off, with the issue of waiver, Pelley's made no similar argument to Boston, either to the trial court or on their answer brief on appeal. In fact, Pelley's conceded to the trial court that 4.960204 applies to section 1983 actions explicitly. The complaint only alleged malicious prosecution against the prosecutor defendants. Haven't the plaintiffs waived their claims, malicious prosecution claims, against the other defendants? I'm not sure I understand the question. The complaint alleged malicious prosecution claims against the prosecutor defendants. Haven't the plaintiffs waived their claims, malicious prosecution claims, against the other defendants? I would say as to the federal claim on malicious prosecution under the Fifth Amendment, I'll concede that point. As to other, under the Fourteenth Amendment, I would say no, and I think it's well briefed. Also, it's important to remind the court that in malicious prosecution cases, the police officers themselves may be subject to prosecution. So if it was waived to, as to the prosecutor, it was not waived as to the police officers in question. Thank you. Counsel, since we're going to, I know I realize you're trying to get to the other waiver argument, but since you're on malicious prosecution, could I just ask you why doesn't Lacey v. Maricopa County take care of that claim? I'm gonna rely on the briefing on that, on that. Well, let me ask you this then, if I could. Do your clients anywhere plead that they were actually innocent of the underlying drug charges? The key issue there is not pleading innocence, it's looking to the underlying claim and whether the fakers were innocent. The briefing explains this well, and I'm going to try to shortly answer your question. I don't mean to obfuscate. At no time did the fakers or anyone else not maintain their innocence. Just because they relied on the exclusionary rule does not mean that they cannot bring them a malicious prosecution claim. So here's my question. Sure. Did they plead that they were actually innocent? Yes, I understand. I didn't handle the criminal case, but... You think I can find that in the complaint? I think you can find what's in the complaint. You can find... Let me, your time is ticking, so I'll tell you that I couldn't, so when you come back on, if you've got it and you can give me the record side, I'd appreciate it. Get out of your way. All right. In their answer to the brief on appeal, appellants raised no arguments similar to Boston. They provide no authority to the arguments raised under Boston, and they even refer to the RCW as a tolling provision. This concession heavily shaped the appellant's argument at the trial court and on appeal. Appellants would have concentrated their arguments on the malfeasance well after the Washington State report was released, such as the misrepresentations, the withholding of evidence, and the cover-up that extended all the way until the government misconduct hearing that was in the summer of 2012. You've got to understand Judge Verscher, at this hearing itself, evidence was being ordered to be provided at the hearing itself. There were numerous public records requests going on between the filing of the motion for government misconduct hearing until the hearing itself. Now, under... Moreover, the police officers themselves, Judge Verscher ruled, that were at the hearing testifying with a reckless disregard for the truth. He found their testimony about evidence appearing at the scene, it didn't make any sense. Now, layman's terms there, they were not telling the truth. Judge Verscher also... I apologize, lost track of my... And that's with the Fagers. Now, Gary Corman's interesting because he really didn't have any understanding of what was going on in the case until the Fagers put all this effort forward in the government misconduct hearing, in the motions, in the public requests, and the motions to compel. So he really had no true understanding of the facts. And if you look at a state of Amaro, you have to concentrate on the malfeasance of the defendants, not on what their knowledge was. Amaro is very clear in the fact that knowledge, tolling, and estoppel are two separate doctrines, and I'd refer you to the briefing there. Counsel, let me ask you, this is kind of a technical question, but for purposes of our disposition, I'd kind of like to know your answer. The district court here held that the Fagers and Corman failed to plead Melissa's prosecution because they didn't show post-arraignment seizures or favorable termination of their cases. A plaintiff must demonstrate a Fourth Amendment seizure and indicate that the seizure came as a result of the prosecution. But we haven't made it explicit that a plaintiff alleged a 1983 malicious prosecution claim under the Fourth Amendment that they must show a post-arraignment deprivation of liberty stemming from the allegedly malicious prosecution. Other courts have held that because malicious prosecution permits damages for a deprivation of liberty, the as a consequence of the legal proceeding. Which is the better approach, and why? I know that's kind of a complicated question, but we have unclear law here, so I'd like your view. Your Honor, if the court would like supplemental briefing on that question, I'll handle that question in supplemental briefing. Other than that, I'm going to rely on my briefing. Why don't we have both counsel send us a brief 28-J letter on that issue, please. Is it your position, counsel, that Corman got the investigative report at a different time than the Fagers? The investigative report came in in October of 2011. When you said came in, I'm just trying to pick up where you left off, where you said Mr. Corman was in a different position than the Fagers, and he didn't understand quite at the same time. I don't understand why that would be. Well, if you go back in time, the earliest point that anybody can argue, and what the Pelley's actually did argue, is that in October and in November of 2011 is when that requisite knowledge occurred. I would argue, as to the Fagers, that that knowledge was actually later, because they were still filing motions to compel, they were still filing public records requests. Testimony was still coming in in August of 2012. So all of this knowledge, although the Washington State Patrol was a piece of the puzzle, Gary Corman was not a part of that particular misconduct hearing, right? The Fagers were, but Gary Corman was not. As that information came in and in piecemeal, some of that information would filter down from the Fagers to Gary on the malfeasance of the defendants. And if you're focusing on the malfeasance of the defendants, it's the fact that they're withholding this evidence and appellants were not getting a true understanding of the facts. Just because they got some information in the Washington State Patrol doesn't mean that they got enough to bring a claim. And Amaro... How do you think the statute started running, counsel? I would say that it started... in the complaint, we argue that it starts running at the government misconduct hearing itself, when the defendants are actually still testifying with a reckless disregard of the truth. They're still withholding evidence. They're still... Judge Verscher is ruling that the fact that evidence showed up at the scene and that their stories don't make any sense. He's saying they planted evidence. That's what he's saying in those hearings. So I would say that that is when those claims accrued. So specifically then, what's the time? Summer of 2012. 2012. That's when the government had actually moved for continuance after continuance during this time. You're down to 548 days. You can use all your time if you want. I'm not gonna use all my time. I'm gonna move on to distinguish. The other thing is, when it comes to the way we're arguing, had the RCW been an issue and not conceded... Now, you read this complaint. This complaint says conspiracy all over it. Now, there's a four-year statute of limitations on there. We're looking at a 12B6 motion. Now, rules are, when justice requires, you can amend a complaint. Now, had this gone on, we could have amended our complaint, we could have brought a conspiracy claim, and the RCW would not have been an issue. So, as to prejudice, we're extremely prejudiced by the fact that appellees can now raise this argument for the first time. Moving on to distinguishing the case at hand. Ted DeBray's understanding of the facts. Now, his facts, I would say, do come in around November of 2011. That's when he got the Washington State Report. That's when he understood the true facts of what was withheld from him. He's the earliest. I would say Stephen Fager, Kathleen Wheeler, Cynthia Fager, those are later in time. Gary Corman, he's only, he's piggybacking on the Fagers. He's figuring out everything. Now, at the hearing itself, prosecution was pounding its thumb, saying, we don't want, this is not the Gary Corman case, but the whole point is, as the continuing violations and whatnot, these are systematic and systematic violations that are going on, and you can't put a fine point on when they're happening. They're not discrete acts, and that is why Gary Corman, Judge Verscher, overruled those objections. Everything's coming at the same time. You're seeing policies and practices that are unconstitutional. I'll refer to... Well, counsel, isn't it true that the continuing violations doctrine has never been applied in the Fourth Amendment context? It has been applied in other constitutional context. Why should it be applied in the Fourth Amendment context? Continuing violations doctrine has to do with large organizations, and the larger the organization is, the easier it is for it to cover up these discrete acts. Now, this is more akin to a hostile work environment than anything else. You've got a government system. Mike Haas, for instance, he's the prosecutor. He was Mr. Fager's defense attorney. He is now the prosecutor in common common. He ran and got paid with votes on this case. This is a large systematic corruption, and yes, it should come under both due process and the Fourth Amendment under continuing violations. I can't put a single point in time and call it a She asked whether the continuous violation doctrine had ever been applied in a Fourth Amendment context. I don't believe that it has, but I don't see a reason why. She's asking us to make up new law, basically, on that point. It's been applied in other areas. I don't see a reason why it can't be extended to that area, but yes, I am asking you to extend the law. I'm going to reserve the rest of my time. Thank you so much. Good morning, Council. Good morning, Your Honors. Daniel Crowner for the Appellees-Clallam County et al. in this case. Just briefly, I'd like to discuss the issue here. I believe that we're talking about a discrete act, and what that occurred in 2008 and 2009. When those violations occurred, that's when the claim accrued was in 2008-2009. So if we're taking a look at Gary Corman, when the arrests and when the search and the seizure happened, that was in 2008. The three-year statute of limitations would have run in 2011. When we're talking about Stephen Fager and Timothy Fager and the others, again, we're talking about a three-year statute of limitations that would have run in 2012. And so we're looking at discrete acts, therefore. And to answer the question about the continuing violation doctrine, that has not been applied to Fourth Amendment cases. And not only that, but even if it were to apply to this case and this court were to make new law, the continuing violation doctrine does not apply to discrete acts that have occurred outside of the statute of limitations. Specific discrete acts that occurred in 2008 and 2009, the continuing violation doctrine could not even save that either. As far as the malicious prosecution claim, I think it's fairly obvious, given the complaint and what Judge Bryan found below, is that those claims were based, again, on the unlawful search and seizure and arrest that occurred in 2008 and 2009. They were specifically pled for that. They did not plead any other type of malicious prosecution that the police officers would have been involved in. So is that a concession that they made a malicious prosecution claim against non-prosecutor defendants? No, they did not, Your Honor. Well, you just talked about allegations against police officers, so you've left me now wondering. As far as the malicious prosecution claim, that was specifically against the prosecutors. And that was specifically against the named prosecutors here. That was not claimed against any of the named police officers. And so in their capacity, the prosecutors have immunity from these claims for the malicious prosecution. And I guess to answer opposing counsel's claims here... But you were just speaking a minute ago about the malicious prosecution claims against the police officers, counsel. So what did you mean? What did we miss? Correct. What I'm trying to distinguish here is that, again, we're taking a look at discrete acts here. And when counsel is trying to claim here that there was a conspiracy or something else that kept going on after this fact, again, what they've alleged as far as the malicious prosecution claim is based on those discrete acts that occurred at the time. Excuse me for interrupting. I'm sorry. I didn't mean to. Sorry. I think your first point is that all of the acts occurred outside the three-year window, right? Correct. Okay, so that's the first point. I get that. Correct. But I want to just be clear that your position is that those claims, the malicious prosecution claims, were only alleged against the two prosecutors, and they failed for qualified immunity. Correct. If I've got that right? Correct. All right. And so in your position as to the other non-prosecutorial defendants is what? Is that they never alleged malicious prosecution against them. Okay. Was there ever a request to amend the complaint? I'm not aware, Your Honor, of that point. I don't believe there was. Okay. Thank you. And I think the other issue here, as far as even taking a look at Judge Bryan's explanation here, is if we take a look at this equitable tolling, and of course the other side, a counsel here, is claiming that these claims didn't accrue until 2012 when they knew and had knowledge of these issues. But again, what Judge Bryan found was that as of November 14th, 2011, that's when they knew and when they filed the motion to suppress. So even as of that time, they would have known whether or not their claims had accrued. And I think it comes back to, again, if we take a look here, these were discrete acts that occurred in either 2008 or 2009, depending on if we're talking about Mr. Corman or the Fagers. And if we're talking about Mr. Corman, again, that would have expired the three-year statute of limitations before he would have filed the motion to suppress, or the Fagers' motion to suppress. If we're taking a look then at 2012, even at that point, they had an opportunity to file their motion to suppress before the three-year statute of limitations expired in 2012. And there's been no explanation here for why this equitable doctrine somehow should start the statute of limitations over. And what they're basically arguing here is that in 2011 or 2012, the statute of limitations should have restarted at that point. There's no case law to say that it should restart or that it should begin anew when they find out of these Well, unless we apply the continuing violation doctrine, assuming without deciding, have the plaintiffs plausibly pled that they were exposed to wrongful policies after December 2011? No, Your Honor, I don't believe they have. Because, again, what the issues there go to is whether or not there was this unlawful search and seizure that And the facts of that go to whether or not the police officers had probable cause and what their investigation was and what evidence they were relying on as part of that. And, again, what we take a look at here is we're looking at discrete acts that occurred. And even as far as a due process claim, again, what the United States Supreme Court has said is where there's a specific amendment that applies, we're applying that specific amendment to these claims. And these facts, the factual claims that arise here, they arise out of, again, the unlawful search and seizure and arrest that were discrete acts. And, again, it's fairly well, it's well-settled case law that, again, as a time of when there's an unlawful search or seizure, that the claim accrues as of that point. The constitutional violation has occurred at that point. And, therefore, that person knows whether or not they have a claim that is accrued at that point. Counsel, I ask your opponent, as a policy matter, whether our court, or we've really never tied it down, or other courts are correct in holding that malicious prosecution claims in those that the plaintiff must show that this that he or she has suffered a seizure as a consequence of a legal proceeding. Do you support that approach? Your Honor, I would have to agree with counsel on this one that we'll need to submit supplemental briefing on that. I know you're going to give us a 28-J letter, but I wondered if you had any live commentary about it. Yeah, I don't think so, Your Honor. I think both of us, that's something, an issue that we hadn't looked closely at from either side. Okay. Let me ask you one other question while I'm talking to you. Opposing counsel has suggested that the RCW 4.96.020 sub 4 represents a tolling provision here, which would save some of the claims. Is it your position that Boston v. Kitsap County disposes of that, or is there anything more that's left of it? Yes, Your Honor. I think, actually, two points on that. Yes, I do believe that Boston v. Kitsap County disposes of that, and that this opinion recently regarding this 60-day extension in RCW 4.96.020 subsection 4 does apply, and that is correct. But briefly, before even discussing that, I think we get to the issue here was if even taking a look, even assuming whether or not that this statute is a tolling statute, even if this court takes a look at Judge Bryan's opinion down below, Judge Bryan did not this tolling statute applied or did not in reaching the merits of the claims here. And I think, again, it comes back to that particular issue is important because, again, we're talking about the discrete acts, and that's what Judge Bryan focused on here in his opinion is the discrete acts that occurred in 2008 or 2009, the statute of limitations for three years would have run by 2011 or 2012. And so regardless of whether or not there's a 60-day extension or whether we look at this statute as a tolling statute or not, their claims, their underlying claims based on those acts in 2008 and 2009 would have been time-barred. Is that because of lack of diligence on at least on the equitable tolling aspect? Well, I don't even believe, Your Honor, there was a lack of, I don't think that was the particular issue. Again, I think if you take a look at when they allege that they knew of these violations, they're claiming at the time that they filed a motion to suppress, which was in 2011. Clearly, at that time in 2011, the statute of limitations still had another year before it even ran. And there's been no authority to say, again, that a statute, when equitable tolling occurs, the equitable tolling occurs for the whole time period of the statute of limitations. Equitable tolling is something that occurs for a particular time to help the plaintiff or when they need... In other words, your argument is that the clock would stop if there was some event that caused tolling, but you wouldn't restart the whole period, right? That's correct. And I could see in this case, for instance, an equitable tolling of, let's say, if they didn't find out until 2011, six months or maybe a year. But again, that's still within the time frame of the statute of limitations that we're talking about. Equitable tolling for three or four years from 2011 until 2014 or 2015, that's just not a correct understanding of how that works. The motion to suppress laid out all of the facts that are the, if you will, the conditions precedent for the claim. That was done in 2011. They still had another roughly year to file. They didn't do so. There's no basis for any equitable tolling. Correct. Correct, Your Honor. And so that leads me to the next point is, again, our position here is that the opinion in Boston v. Kitsap County from this court, that was a correct decision. Because again, looking at this statute, it basically adds 60 days on to the statute. And so it's not a tolling statute, but it's a special statute of limitations. And again, our point, though, is even if we look at that by the time that they could file their complaint in 2014, whether or not we're in 2014 plus or minus 60 days, we're already two, three years past when the discreet acts. And then just real quickly. Well, counsel, can I just, in fairness, opposing counsel was trying valiantly to get to his waiver argument and we kept peppering him with questions. You're not going to get another chance to come. What is your response to his argument, and you saw it in his supplemental briefing, that your team has waived the Boston argument because you conceded it Yes, and I don't believe that the appellees in this case did waive the argument. Obviously, a party can waive an argument. I don't believe in this case that a party can waive the law. And so also, I think it's important to take a look even at Judge Bryan's own opinions in taking a look back at a 2010 case versus Tracy. And as early as 2010, even Judge Bryan noted that the binding authority regarding this statute of limitations and this tolling statute was vague. He had noted that there was disagreement even among the district courts in western Washington. And so a couple of courts had applied it, a couple of courts had not applied it, and then also we've got the issue where we've got the Court of Appeals from Washington in Southwick also saying that it's a special statute of limitations, not a particular tolling statute. So I think at this point, the authority, as of the time when the brief was written, it was a little bit vague of whether or not it did apply or did not. And so I don't believe that either one, it was a false statement, or two, that it was a waiver of that argument. Thank you. But from your perspective, it doesn't matter. Correct. What we talked about before in terms of what was alleged at the suppression hearing. That's correct. If everything was told up until the time they filed the they were still two weeks late, right? I'd say more than that, yeah. Well, anyway, your time's ticking, so I'm not going to quibble, but I think we've looked pretty hard at the calendar. And your point is it would all be, they still didn't file within three years. Correct, correct. And so the bottom line, from your perspective, following up on my colleagues' comment, waiver doesn't make any difference. If you waived or you didn't waive, the clock is run. Correct, I believe that. And again, I believe it was based on the authority that was out there at the time that, again, it was conflicting authority as far as whether or not this statute could apply or did not apply. And not only that, I believe it was conflicting authority from the Western District Courts themselves on this issue. Again, I think the other thing that comes to you here is, again, I want to harp on the fact here that we're really looking at discrete acts. And so by taking a look at these other claims that they put out here, the malicious prosecution claims, whether or not there was a due process claim, again, they're trying to recast these, their specific discrete acts, trying to recast them in a different manner. We've got the continuing violation doctrine, which we've already discussed should not apply in this case, especially to these discrete acts. And we've already discussed the equitable tolling as well. So what this leads me to, basically, here is that the only way that the appellants in this case can really get over this bar is, one, by attacking this court's prior opinion in Boston versus Kitsap County, and by collaterally attacking that. And we believe that that opinion is good law and should be applied, and that, again, the statute of limitations has barred the appellees' claims in this case. We would ask that this court affirm the dismissal of the federal claims, and then also affirm the decision not to exercise supplemental jurisdiction. Thank you. Thank you, counsel. Thank you, Your Honors. I'm going to start off with estoppel. Now, a state of amaro focuses doctrine between tolling and estoppel. The focus of this equitable estoppel analysis is not whether the plaintiff knew a cause of action or even pursued some sort of litigation based on that knowledge. Think about that. You can Counsel, with respect, you heard what I said to your opposing counsel. What was not stated, what was not pled in the suppression motion that you believe would survive as some basis for an allegation that the statute has not run? In the hearing itself, there was so much evidence coming forth that a lot of the things were just mere suspicions. Specifically, what what what survived, what what was pled, or better said, what was not pled? We didn't know the police hearing that you think survives that's the basis of your claim that the statute has not run. Number one, the practices and procedures of the actual Kalm County prosecutorial office. So you're talking about a vanilla claim? Not just a vanilla claim, but the police were acting with reckless disregard for the truth in that claim. We had no idea that the police were lying until we put them on a stand and then you could actually find out what they said, compare it to something else, and then impeach them. And that's what you're going on off of there. But your claim, if I understand it correctly, is that you want your malicious prosecution claim to survive, which is quite different than what you're talking about now in terms of what the county's practices and procedures were, right? It's due process, correct. Okay, so what I'm, again, I'm looking for a specific allegation, specific facts that could be relied upon to save your causes of action that were not alleged at the suppression motion hearing. That were not alleged in the suppression? Not alleged. Because you clearly knew about those. You raised them. Your Honor, you're putting me in a tough spot. I was not the criminal attorney at that time. What I will say is that if you read the motion to suppress, it's attached as part of supplemental proceedings. You know, I'd have to brief it. Okay, well, you realize, of course, what you allege, you know. You're stuck with that. And that's what I'm struggling with, is you made these allegations in 2011, but you're saying, well, we didn't know about these, but you alleged them in 2011. You can't have it both ways. Your Honor, this is a 12b6 motion, if I may continue. Just answer the question, sure. The whole point is Super Cargo Mail and a couple other cases talk about how these claims exist because of evidence outside the pleadings. Now, if I had to list every single thing in that pleading, I'd have a hundred page complaint. Now, the fact that they raised a few allegations when the court record, the transcripts, I could have brought all of that in and given you an analysis. The fact that this was dismissed without a single amendment, there's cases out there that talk about it, if a plaintiff isn't allowed to amend, that's an abuse of discretion in this type of situation. Judge Bryant should have allowed us to amend if there was some type of defect there. I think we have your point, do either of my colleagues have more questions? One more, if I might. Please. Thank you, Judge Smith. Is your due process claim a claim for procedural due process as well as substantive due process? I would say, we're relying on Tadham versus Moody, where the detectives provided exculpatory evidence and made affirmative misrepresentations during the criminal investigation. There, the charges were dismissed and a plaintiff brought a federal lawsuit under the 14th Amendment. So yeah, I think you can call procedural and substantive. Procedural and substantive? That's an unusual beast. Well, I'll rely on the briefing there. You're putting me on a tough question. I'll be candid about it. Thank you. Any other questions? Nothing, thank you. Thanks to both counsel for their arguments, we appreciate it very much. The amendment
judges: D.W. Nelson, M. Smith, Christen